Case No. 3, 18-0584, William Wynne, athlete by Benjamin Haskin v. James Torrence, appellate by Cindy Johnson. Ms. Johnson, you may proceed. Seems a little like Deja Vu all over again, doesn't it? It does. We are here on the Kittiland train again. May it please the Court, my name is Cindy Johnson and I am here today representing James Torrence, one of the bidders that has sealed the bid auction relating to the Kittiland train. The auction was held by the judgment creditor and plaintiff in this case after the plaintiff received a turnover order for the Kittiland train. This case is before the Court because the lower court improperly failed to follow binding Illinois Supreme Court precedent that had been so frail for about 170 years. In 1848, the Supreme Court decided Webster v. Torrence, 11 ill, 254. It is the genesis of this appeal. As one of the leaders in the country for announcing the principle, the Court said that in sales held with secret bids or sealed bids, that a bid phrased as being for a dollar figure over the next highest bid was considered a bid that was no bid at all. It violated the principles of fair bidding, created unfair competition. These were bids that were reckless, desperate gambling bids in the Court's words, were bids of, in the Court's words, a moral tendency. And it created a fraud upon other bidders. Again, the Court specifically held at page 271 that these bids are to be treated as no bids at all, as if the bidder had not made a bid. The Court further said that in order to be fair, bids are to be, quote, complete and independent offer of itself, depending upon no other bid for its explanation or support. There has been no case in Illinois, appellate or Supreme Court, that has come down contrary to Webster v. Torrence since 1849. I have not found, and I don't think opponents have because no one has cited, any case that came out against it. It just has not been discussed. Neither of the appellees in this case cited a single case to the lower court or to this court, even from another jurisdiction that commends or approves of these types of use of specific X dollar over bids. In fact, other states and federal services have followed the lead of Webster v. French in the following years since then. The Federal District Court in New York said that such bids, quote, destroy the integrity of the bidding system. And that is in Trump v. Mason, 190 fed sup, 877, a case from 1961. The Tenth Circuit said that such bids are not bona fide bids. They are not fair bids. That was in Holliday v. Higbee, 172 fed second, 316, 1949. The Arkansas Supreme Court said such bids, quote, destroy all fair competition in bidding. And that such bid is, quote again, no bid at all. And in fact, following Webster v. French and using its language. That is in the case of Casey v. Independence County, 159 SW 24, that's Arkansas, 1913. In the lower court, the judgment creditor obtained that order for the turnover of the judgment debtor's asset, the Kitty Land train, that the Torrences, both James, who was an appellant herein, and his brother, William, were holding in storage for the judgment debtor. William went, the other party in this case, and James Torrence, each made offers to the bank's counsel for the Kitty Land train right after that order was entered. One said, hey, I'll offer this. The attorney came back and said, well, the other side offered that. Will you make a counteroffer? And a couple offers went back and forth by emails and phone, which are referenced in the emails, for the next couple days. Those offers were in the $10,000 to $13,000 range. They were not, would have ultimately ended up being the highest legal bid. To avoid the slow, tedious process, the bank's attorney emailed everyone and told them have their clients submit bids by the next day to her office. It could be by fax, hand delivery, but it had to arrive by 5 p.m. That also said that her client, the judgment creditor, would review the bids and select the winning bidder. Since no one would know what anybody else was bidding by this process, this was really designed to get everyone's highest and best offer. James Torrence, my client, submitted a specific bid of $41,100, a substantial sum higher than the original discussions where parties were talking about what they would offer. It was designed to be their highest and best offer. William Wendt did not bid a specific amount. His bid was $3,500 over the next highest offer submitted by the bidding deadline. After the bidding deadline, judgment creditors selected Wendt's bid. Torrence, by the way, had no idea this happened because despite repeated inquiries, judgment creditor's attorney would not respond to James Torrence's counsel's request as to who was the winning bidder or what price was paid. All she would advise is that James Torrence was not the winning bidder. The equity's argument is that the bank, the creditor, is only obligated to conduct the sale in a commercially reasonable manner, that it didn't have to do, that this was not a sealed bid auction per se. And so they're saying that the Webster-French case does not apply. Is your argument really that there is no circumstance where you can have a share bidder in X over the next highest bid that is never commercially reasonable? Is that the gist of your argument? That's part of the gist of my argument. The other basis is that under 214.02, sales conducted under the court's auspices have to be fair and equitable as well. The standard in the statute is not actually commercially reasonable, although the court's order said do it in a commercially reasonable manner. But the statute says it has to be fair and equitable as well. So part of my argument is I think they're never commercially reasonable for all the reasons I stated that the Webster case and other cases have said. Because basically, it makes one person do all the work as to figure out how much it's worth, and the other person just says, I'll bid a dollar more, a little bit more. This was more than a dollar, certainly, but it was just a little bit more. Based upon the size of the bid, it wasn't even quite 10% more. But my other argument is that it is not fair and equitable, which is actually the standard that the court is required to follow. That it is not fair and equitable to have one person figure out how much they're going to bid. And in this case, there was another small bid by, I think, the Train Museum for $10,000, which later we all learned about in briefs, but we didn't learn then. As I said, the only way that James Torrance's counsel, myself, actually learned this information was when William Nguyen's counsel called and said, we would like to pick up the train. We're the winning bidder. And they were asked, please provide the bill of sale and all the documents to show that they were the winning bidder, because no report of sale even to this day has been filed with the court. And those documents were provided. Upon receiving them, James Torrance filed a motion to the court to declare that he had made the highest legal bid. The Webster v. French case was raised after having discussed it with counsel and counsel saying, I'm not changing it. The bank's counsel. The motion requested that the court declare that he had made the highest legal bid. That the court order the bank to provide a bill of sale to Jim Torrance upon Jim Torrance's paying the sale price and the bank providing wire instruction so that could happen. And requested that the bill of sale that was issued to William Nguyen be determined to be void or voided. The court, without giving any reasoning in its written opinion, stated that it was distinguishing Webster v. French and denied the motion. The court did err at that point in doing that. Your honors do not have to worry about that if you like, whether he erred, because this is a de novo matter. It's a post-judgment matter where no evidence was heard by the lower court, and those matters are de novo. So as this case is de novo, James Torrance is asking this court to find that William Nguyen's bid of $3,500 over the next highest bid was really no bid at all. And that the court should declare James Torrance having tendered the highest specific bid of $41,100 as being the winning bid to order the bill of sale issued to William Nguyen to be voided and of no effect, and direct the judgment creditor plaintiff to provide James Torrance with his wire instructions, and then once he makes the payment of the sale price to actually issue the bill of sale to him. I don't have anything further. This is a pretty short issue. It's based basically on one case. If the panel has any more questions, I'd be happy to answer them. I'd like to question you about the remedy you're requesting. You're requesting that your client become the highest bidder. Why not ask that the sale be voided and a new sale occur? Why isn't that your position? Right, because the whole purpose of making these kinds of bids improper under the cases that have been cited is that it makes one person do all the work to figure out what their highest and best bid is. The other party doesn't actually have to decide what their highest and best bid is at the time. They just say, I want to bid a little more than the other party. The other party that's really interested in this training and is likely to make a bid of some size already knows what my client's highest and best bid. There's no way to unring that bell. My clients are going to have to decide whether they want to offer somewhat substantially more at some kind of open auction. But Mr. Wendt now knows what my client is probably willing to come up with, maybe only a little more, and he can be prepared not to come up with what he thinks it's worth and say, hey, I'm going to stop bidding at $50,000. You've answered my question. Thank you. If there's no other questions, I would just like to reserve my time for rebuttal and I would thank the panel this morning and defer to my opponent. Thank you. Mr. Haskin? May it please the court, counsel, Benjamin Haskin on behalf of William Wendt. The respondent's argument is based upon the premise that the bank sold the Kitty Lynn train via an auction and then had a duty to accept their bid over that of William Wendt. This is not the case. This was a private sale pursuant to the court order under Section 1402 in which the bank retained considerable latitude and discretion in the manner in which the train was sold. Some background facts is helpful to understand the context in which the sale took place. The bank obtained a judgment against William McNeary, the judgment debtor, back in 2010 for just over $1.8 million. Soon thereafter, in response to a citation to discover assets, Mr. McNeary disclosed that he owned the Kitty Lynn train that's the subject of this case. In 2011, the bank obtained an agreed order in stipulation for the turnover of the Kitty Lynn train, but soon after that order was entered, McNeary was forced into bankruptcy, which paused those efforts. Fast forward to 2015. The bank obtained relief from stay, got a new motion for turnover, and got a new order for turnover against William McNeary. But at that point, William McNeary, in the circuit court, advised the judge that, well, I don't have the train anymore. It's been transferred to respondents, or respondent in this case, which was the first instance the bank or the court was advised that the train had been transferred. Thereafter, the bank served citation to discover assets to respondent, took his citation examination, in which it was disclosed that in 2010, during the time the judgment debtor was in bankruptcy, the respondent assisted the judgment debtor, moved this train to the respondent's property, did not advise the trustee in bankruptcy, did not advise the bank, and did not advise the court. The bank then proceeded to file a motion for turnover against respondents, which they objected to on the basis of an adverse claim. That dispute is the subject of a different appeal that is pending with this court. That motion for turnover was granted via the April 16th order that granted the bank the right to sell the train in a commercially reasonable manner. And that's what they did thereafter. They fielded an offer from the train museum for about $10,000. They fielded an offer from a respondent for about that amount. And eventually, counsel for the bank said, in order to streamline this process and avoid a lengthy process, give me your best, the highest bid by a date certain. And there was no further guarantees. What counsel said is, thereafter, this will be submitted to the bank, and the bank will be advised of who will be sold to. Thereafter, the bank... When it's the judgment creditor that is conducting the sale, isn't there a heightened level of scrutiny about whether or not the method that they employ is equitable, fair, and commercially reasonable? I don't know, Your Honor, if it would be a heightened level, but there is certainly a requirement to be fair. But that is a requirement in Section 1402 that inheres the benefit of the judgment debtor. Because 1402 is a statute that is saying, there are two aggressive parties in the sale of collateral. That is the judgment debtor, who wants collateral to be sold for the highest amount to be applied against the judgment. And it is for the benefit of the judgment creditor, who obviously wants to sell it for the highest amount to apply against the judgment as well. Do you dispute that these types of options... ...that the X over the highest bid price... Do you dispute that those are commercially unreasonable? We... It depends on the factual context, Your Honor. And that's where these cases cited by Respondent, both Webster v. French, and the three additional cases, provide context that is very important to distinguish. And that is, one, these were all options by government agencies. Webster was a state of Illinois. The Trump case was the Federal Housing Administration. Holliday was the Farmers Association. And Casey was the state of Arkansas. And the focus... And in each of these cases was a judicial sale by... Sorry, not a judicial sale, but a sale by the government subject to specific guidelines and restrictions. In both Webster and Casey, it was sold via legislative action dictating how it was going to be sold. In Trump and Holliday, it was a sale subject to specific restrictions guidelines. In each of those cases, the Court highlighted that the invitation for bid provided detailed instructions that said maximum price, minimum price. In the case of Trump, information about the mortgage. And in those cases, the Court emphasized that the government specified that they retain discretion to reject bids. So in each of those cases, the X over bid, if we're going to call it that, was decided based upon either the legislative act or the federal government's right to reject bids. It's not a rule of law that applies in the abstract to any option. It can only apply when the circumstances allow it. Also, in those cases, because it was cases involving the government, the primary focus wasn't a fair bidding process. Did it provide equal opportunity to all the bidders? And in Webster, the Court used the language allowing this X over bid would be submersive of the legislative intent. But that doesn't apply here. There's no legislative intent. There's no guidelines or instructions of how the bank was required to act. In fact, the opposite is true. Under 1402, its primary focus is just to sell for the highest amount. And it has very wide discretion to do so in any manner that it deems to get the highest amount. It was not under any obligation to accept bids from third parties. It could have simply sold it to one party immediately after the turnover order. It's possible to reject them, correct? No, I mean, only if it... If it depends on the party that's selling the secured card that's trying to recoup the money. The burdens on them show that it's reasonable that they're getting the highest and best price because they have to have some regard for the debtors. If you just say, well, they could sell it. They didn't have to advertise it. They could only do that if they could demonstrate that that was the highest and best price. Absolutely, Justice, and you're right because had they sold it originally, it is possible and we think likely that the judgment debtor or his estate or the representative because he had deceased at that time, could object. And it's their interest that would have been harmed. What was the appraised value of this transaction? It was between $10,000 and $15,000, I want to say $10,000 and change. And what did the sale have? $43,500. Was the X over bid? The X over bid was $3,500 over the next highest bid. Well, the question is, is X over a bid? Yes, under... I think his question is, was that what the $43,000 bid was? Did it include $3,500? Is that correct? What was the highest bid? In this case, we would say it is my client, Mr. Bynes because he was willing to pay $3,500 over. And unlike the authority side, there was no obligation to accept or reject any bid. The bank, as a private selling agent, retained discretion and really had the obligation to accept the highest offer that would be applied against the kitty latrine, which in this case was the $3,500 over the next highest amount. Had they rejected that, it certainly would have given ground to the judgment debtor or special representative coming in and said, you had a bid that would have... or an offer that would have given you $3,500 more. By rejecting that, you've failed to apply that against the judgment, which was needlessly high. Because this was under 1402, the bank had an obligation to accept the highest amount. Importantly, prior to 2008, 1402 only allowed the sheriff to sell property. But an amendment in 2008 allowed the court to appoint a selling agent to do so. And in the legislative text of the reasoning, it says it is to enhance the value of it, that a private agent such as the bank has the best opportunity to enhance it, which is what they've done here. If the court wanted this to go to auction, it certainly could have done so. But that's not what ordered. It was a private sale in which the bank had discretion what to do and how to do it. And getting to the legal relief here, in Webster v. French and in an Arkansas Supreme Court case, the unsuccessful bidder was able to go to court and complain that the federal government didn't follow the act that was passed. In Trump and in Holladay, the unsuccessful bidder sued in federal court saying the federal government had an obligation to accept their bid. And in that case, the court said no. The instructions in those auctions permitted the government to reject any bid. And it was decided on that basis. And here, there is no instructions that was not followed. There is no legislative act that was not followed. And so there's no foundation for a respondent's claim. All he's simply done is objected to a sale in supplementary proceedings that was for the highest amount. The court is afforded considerable discretion in supplementary proceedings to allow the sale for the highest possible amount, and that is what was done here. And the order of the court that permitted the sale and then rejected the objection should be affirmed. Is there no further questions? I believe so. Thank you. Ms. Jackson for rebuttal? Mr. Haskin has mentioned a lot that the bank had to get the highest and best number, the highest and best dollar for this asset. It's interesting that he talks about the structure of the sale. Webster v. French, the court specifically said that the governor under that statute, for instance, did have discretion to accept certain bids. It said the governor was supposed to accept the highest amount. What the court specifically said is that figuring out the highest amount is not a discretionary issue. It's a matter of numbers. And if you look at Webster v. French, it said you can't count an X over bid as part of the numbers. You have to count the $41,100 in my situation as the highest bid. That is how you calculate the numbers. There's no discretion here for the governor to say what the highest number is. The Supreme Court said the highest number is the highest specific bid. If we apply that to the bank here, the bank has the same problem. If the bank has the discretion, if it has this duty that Mr. Haskin says to get the highest number, the highest actual bid, Webster v. French says there's no discretion in that. It's the highest specific bid, period. And Webster did not make these findings based upon the fact that the statute said this and the statute said that. It talked about these bids in general and analogized to other bidding that had just started of this type that the U.S. Post Office was using and how they treated those bids. So this was not just for the statutory issue. This bank's discretion actually goes against Webster v. French. But I think it's more than that. I think that you have to think about the fact that these cases do have some heightened scrutiny under 214.02 because they are under the auspices of the court. The reason they used to be by the sheriff is it was an open cry auction. It was between, if you look at the statutes for when sheriffs have to have auctions, it's between the hours of sunrise and sunset and it has very specific requirements that what they have to do and how they have to advertise it. And the reason that was there is to make sure that when the court ordered something sold and issued a bill of sale or a judicial deed or foreclosure, for instance, when these were done under the auspices of the court, they should appear to be fair. They should appear to be not only commercially reasonable but higher than commercially reasonable. And when 14.02 did change to say, hey, we think there's a better way to get these things sold. Why should we have to have the auctioneer sell a priceless piece of jewelry when some expert auction house, Lloyd's of London, could sell it for much more money? When you have those types of situations it was better the legislature thought if we could do it in a different way. But then they said it has to be fair and equitable. It didn't say commercially reasonable. It said fair and equitable. It is unfair and equitable for the bank to just decide who is going to be the highest bid without taking into account Webster v. French and without reversing their opinion when they are advised of it before a motion is filed. It's not fair and equitable for them to refuse to say to one of the bidders who the highest bidder was and for how much. To never tell them and for the bidder who didn't win to only find out when they're presented with a bill of sale from who claims to be the highest bidder. There were many attempts by James Torrance to find out who was the highest bidder when. They were concerned maybe they'd have to put up a bond. Maybe they'd have to file a notice of appeal. And they were doing everything they could by contacting the seller's attorney. The seller's attorney wasn't telling them. That's not fair and equitable. And to this day no report of sale has been filed with the court saying what happened at that sale. Now there's no requirement in the statute that there be one. But if the court orders a sale one would think someone should say how much it sold for and what. The only reason the lower court knew is because James Torrance brought a motion and said, hey, I cry foul. This smelts. And it's against the case that's been standing for 170 years that has never been overruled, that is binding. And it's not distinguishable just because it was under a statute. Because if you look at Webster v. French, they specifically talk about the discretion and what the statute says but they also say that it is not discretionary and it's not a statutory issue to figure out what the highest number is. And an X over number is not the highest number. I thank the panel for your consideration today. I'm counsel for his arguments. And I would ask that the court and the Sanova Review void the bill of sale to William Wendt and grant it to the next highest bidder or order the bank to proceed in that manner. I have one follow-up question on the rebuttal argument. You mentioned that commercially reasonable isn't always fair and equitable. Is that what you said? I think that it's a different standard. I think it's a broader standard. But the court ordered commercially reasonable. It did. Are you challenging the court's order? No. I think the court can order a commercially reasonable sale. But it has to not only be commercially reasonable, but it has to be free of taint. It has to be fair and equitable. Thank you for answering me. You're welcome. Thank you, Your Honor. Thank you both for your arguments here today. This matter will be taken under advisement. A written decision will be issued to you as soon as possible. Without further ado, please have a seat.